Lee Parsons Davis,
Official Referee. Action for a declaratory
judgment involving the revocation of an inter vivos trust agreement, entered into in 1931 between the plaintiff herein as settlor and the defendant, New York Trust Company, as trustee.
The trust provides that the net income be paid to the wife of the settlor during her lifetime and thereafter to the only daughter of the settlor, if then living, during her lifetime. The trust to terminate upon the death of the survivor of the said wife and daughter. The trustee is then directed to pay the principal of the trust as follows: (a) To the settlor’s grandchildren, if any, or their issue per stirpes; (b) In default of then living grandchildren or issue, to the settlor; (c) If neither the settlor nor any grandchild or issue were then living, then pursuant to testamentary appointment made by the survivor of settlor’s wife and daughter, and (d) In default of such appointment, then: “ to the person or persons who would be entitled to take if the Donor had survived the termination of the trust and died immediately thereafter a resident of the State of New York intestate and the owner of the property.”
By a formal notice, served on the trustee on or about April 28, 1954, the settlor revoked the trust and simultaneously filed with the trustee the written consent to the revocation of his only child, the defendant Gertrude W. Haddox, constituting all of the persons in being beneficially interested therein.
The trustee resists the attempted revocation and raises the issue that the ultimate provision, quoted above, for disposition of the trust corpus confers a remainder in the distributees of the settlor, and, therefore, in accordance with section 23 of the Personal Property Law (before amendment made by L. 1951, oh, 180, eff. Sept. 1, 1951) “ all the persons beneficially interested ” have not consented to the revocation.
The settlor’s wife died in 1938. The only child of the settlor, who has consented to the revocation, is now the income, beneficiary. She is without issue. In this latter respect, within the meaning of the statute, it is now established that unborn children *855 are not persons ‘‘ beneficially interested”. (Smith v. Title Guar. & Trust Co., 287 N. Y. 500.)
The issue raised by the trustee poses the question: Does the instrument in question provide for a reservation of a reversion to the settlor, or does it create a remainder in the distributees of the settlor? In the latter contingency the persons in this class are unknown and cannot be determined until the termination of the trust. Obviously, they cannot consent to the revocation.
The settlor asserts there is no remainder to his distributees but only the reservation of a reversion to himself.
The answer rests upon the ‘‘ intent ’’ of the settlor as expressed in the trust agreement. (Richardson v. Richardson, 298 N. Y. 135.) No useful purpose would be served in analyzing the results reached in cases involving various provisions deemed relevant in a variety of combinations for this was done in Richardson v. Richardson (supra), and further discussed in Matter of Burchell (299 N. Y. 351), wherein the court states (p. 361): “In analyzing an instrument and attempting to explore the almost ephemeral qualities which go to prove the necessary intent, many single factors may be considered. Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases. In the last analysis, the ultimate determination rests on the particular instrument under consideration, aided by the rule which has grown out of the old common-law doctrine and developed over a long line of cases as a rule which allows the language of the instrument creating a remainder to take effect provided some additional evidence pointing the intent of the grantor is present to buttress the language which would create the remainder.” (Emphasis supplied.)
In the Richardson case (supra) the court indicates “ clearly the factors which, when present, evidence the fact that a remainder was intended as a legal conclusion ” (p. 145), attaching considerable importance to at least three, which may be summarized as follows: “ (1) that the settlor has made a full and formal disposition of the corpus of the estate, i.e., disposed of the principal on several contingencies other than having it revert to himself, (2) that the settlor has made no reservation of a power to grant or assign an interest in the property in his lifetime, and (3) that he has reserved only a testamentary power of appointment ” (p. 140). In arriving at its conclusion that a remainder was intended, the court further states (p. 144): *856 ‘‘ Another factor which points to a remainder and which was relied upon to some extent in the Engel case ([280 N. Y. 43], supra) is the failure of the settlor to provide for the return of the principal or any part thereof to herself upon any contingency.”
The direction, then, to transfer the corpus to one’s next of kin, standing alone, does not create a remainder. There must be, in addition, some sufficient or clear indication by the settlor that he intended to create a remainder, in the absence of which the rule seems definite that the settlor intended a reversion.
The trust instrument confers testanientary power of appointment upon the survivor of the settlor’s wife and daughter. The wife is deceased. The act of the daughter, the surviving life beneficiary, in consenting to the revocation can be regarded as tantamount to the nonexercise of her testamentary power of appointment over the corpus of the trust. The trust instrument expressly directs return of the corpus to the settlor, if living, in default of issue of his only daughter, at the termination of the trust term. This contingency is stressed in the Richardson case (supra) as a factor, the absence of which points to a remainder. Further, in Matter of Burchell (299 N. Y. 351, supra) the court emphasizes this point when it states (p. 360): “ Where we have held that a reversion was intended although a testamentary power of appointment was reserved, the instruments have provided that the trust principal would revert to the grantor upon some contingency (Berlenbach v. Chemical Bank & Trust Co., 235 App. Div. 170, affd. 260 N. Y. 539; City Bank Farmers Trust Co. v. Miller, 278 N. Y. 134) or that the grantor retained control over the principal (Guaranty Trust Co. v. Armstrong, 294 N. Y. 666).”
Such a contingency is presented here as stated. Only in the event of his own prior death did the settlor yield even to the primary objects of his bounty the right to select the ultimate recipients.
The difficulty of drawing the line marking the distinction between the reservation by a settlor of a reversion and the creation by the settlor of a remainder has “ vexed ” the courts for years and the authorities are not harmonious, ultimately leading to the amendment of the statute in 1951 (L. 1951, ch. 180). However, bearing in mind that the settlor’s intent to create a remainder is not to be determined by any mechanical test, the rules of construction laid down in this connection, when applied hére, in my opinion, require a finding that the trust instrument reserves to the settlor a reversion, and that the settlor did not intend to vest a remainder in his distributees. *857 Therefore, all of the persons beneficially interested, within the meaning of section 23 of the Personal Property Law, have consented to its revocation and the said trust has been effectively revoked.
Judgment is directed for the plaintiff. The parties have stipulated that findings of fact and conclusions of law be waived. The foregoing, therefore, constitutes the decision of the court. Settle judgment.